[No. 9883. Department One. January 15, 1912.]

JOSEPH TOUPIN, *Appellant*, v. KENT LUMBER COMPANY, *Respondent*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—CONTRIBUTORY NEGLI-GENCE—QUESTION FOR JURY. Whether a rigging slinger in a logging camp was guilty of contributory negligence in not getting out of danger, or in giving the wrong signal, is for the jury, where it appears that, after attaching the cable to a log to be hauled in, it is not practicable or customary for the slinger to get out of the zone of danger before giving the signal to start the engine; that, upon plaintiff's giving the signal, the front of the log, which was obscured by brush, failed to start, and the rear end began to rise, when he immediately gave the signal to stop, which was not obeyed and he was struck by the log, and it appears that the failure to stop was due to error of the foreman in stationing the signalman too near the engine; and it also appeared that he gave the signal to "start" which seemed to him to be proper, and it is doubtful whether he should have given a signal to "start slowly."

MASTER AND SERVANT—NEGLIGENCE—METHODS OF BUSINESS—SIG-NALS—FELLOW SERVANTS. The failure of a signalman to transmit a signal to start a donkey engine in a logging camp does not relieve the master from liability for injuries to a rigging slinger, as being an act of a fellow servant, where the accident was not the fault of the signalman, but was due to a faulty system in stationing the signalman too near the engine.

Appeal from a judgment of the superior court for King county, Ronald, J., entered June 10, 1911, upon sustaining a challenge to the evidence, dismissing an action for personal injuries sustained by a rigging slinger in a logging camp. Reversed.

*Willett & Oleson*, for appellant.

*Milo A. Root*, for respondent.

[1]Reported in 120 Pac. 100.

FULLERTON, J.—The appellant received personal injuries while in the employment of the respondent and brought this action to recover therefor. On the trial, at the conclusion of his case in chief, a challenge to the sufficiency of his evidence was interposed and sustained and the action dismissed with prejudice. This appeal is prosecuted from the judgment of dismissal.

The evidence tended to show the following facts: The respondent was engaged in the logging business, and the appellant was one of its employees. The particular crew with which the appellant was put to work was engaged in hauling logs from the woods where they were cut, to certain skids placed alongside a logging railroad. The logs were hauled by means of a stationary donkey engine, which operated a steel cable. The cable would be stretched from the engine to a log it was desired to haul, the end of the cable fastened thereto, and the log hauled in by causing the cable to wind up on a drum attached to the engine and operated thereby. To facilitate fastening the end of the cable to the log, an instrument called a "choker" was used. It consisted of a short piece of steel cable, having a hook at one end and an eye at the other. It was the appellant's duty to hook the end of the cable onto the choker and superintend the starting of the log; in local parlance, he was called a rigging slinger. He communicated to the engineer operating the engine through a signalman. A wire, one end of which was fastened to a whistle on the engine, was stretched along the line of the cable. The signalman communicated the signals given by the rigging slinger to the engineer by manipulating this wire.

The appellant had worked for the respondent but one day prior to the day he received his injury. On that day, he assisted in putting a new cable onto the donkey engine. When he started to work the next morning, it was quite dark, and he did not see where the signalman was stationed. The haul was started some one thousand feet back from the en-

gine, the wire cable being stretched out almost its full length. The first three or four logs he hitched onto pulled out without difficulty, and he had no occasion to give a signal other than the signal to go ahead. The next log on which he hitched the cable was about 40 feet in length, and the end on which the choker was fastened was covered with brush so as to render it impossible to see what was in its immediate front. After hitching the cable onto the log, he gave the signal to go ahead, and immediately stepped away from the log at right angles thereto to a distance of twenty-five or thirty feet, where he stopped to watch the effect of the pull by the engine. As the cable tightened the log instead of pulling out as was expected began to rise at the farther end. On observing this the appellant gave the stop signal and immediately started to get out of the way of the log. The stop signal was not obeyed, and the pull on the log swung it around onto the appellant causing the injuries for which he sues.

The appellant was an experienced man at the work he undertook to perform, and testifies that he performed the work in the usual and customary manner; that it was not usual nor practicable for a rigging slinger to go beyond the zone of possible danger from a log before giving the signal to haul on the cable, as to do so would take too much time, causing not only a loss to his employer but causing the employee to "lose his job;" that there was no danger in the situation in which he stood had his signals been obeyed in the customary manner, as the log as soon as the pull on the cable ceased would drop directly to the ground; and that it was necessary moreover for the rigging slinger to be reasonably close to the log that he might see that the cable hook did not slip from the eye of the choker. His evidence further tended to show that the reason why the signalman did not catch his signal to stop was because he was stationed in the wrong place, being stationed too close to the donkey engine; that, when the engine was not in motion, signals could be

heard anywhere along the line, but when it was put in motion the noise was such that the signalman could not hear the signals of the rigging slinger unless he was much nearer the rigging slinger than he was in the present instance. There was evidence tending to show, also, that the rigging slinger had nothing to do with stationing the signalman; that this duty was assumed by and belonged to the foreman in general charge of the work.

On cross-examination, the appellant testified that there were three signals in use between the rigging slinger and the engineer in work such as was being carried on in the present instance, the one meaning, "go ahead," the other "go ahead slowly," and the third "stop;" and the cross-examiner sought to show by the surrounding circumstances that the rigging slinger had given the wrong signal in the particular case; that he should have given the signal "go ahead slowly" instead of the signal "go ahead;" and that it was this fact that caused the appellant's injury.

The record is not entirely clear as to the ground upon which the trial judge rested his decision, but it can be gathered therefrom that he thought the appellant guilty of contributory negligence, either on the ground last suggested, or that he failed to exercise proper prudence before directing the engineer to haul away on the log. But it has seemed to us that the question whether or not the appellant was guilty of contributory negligence was for the jury. As we have said, he testified not only as to the manner in which he performed his work, but testified also as an expert that he performed it in the usual and customary manner. In this, he was supported by other witnesses who were experienced in the work the appellant was performing. If this be true, clearly the appellant was not guilty of contributory negligence unless there was something in the particular circumstances that made it necessary to act contrary to the ordinary rule; and whether or not there were such circumstances was for the jury to determine. So, also, with the question

whether the proper signal was given in the first instance. The appellant testified that he gave the signal that seemed to him proper under the circumstances, and we think the question whether or not the signal was the proper one was sufficiently doubtful to make it one for the jury rather than one for the court.

It is argued, further, that the appellant and the signalman were fellow servants, and that any fault of the signalman cannot be visited upon the master. But the evidence tended to show that the fault was rather with the signal system than with the signalman. For this, the master was responsible; and if it was faulty, either because the signalman was stationed at an improper place, or because of some defect in construction, the master is equally responsible for an injury caused to his servants thereby. *Westerlund v. Rothschild*, 53 Wash. 626, 102 Pac. 765; *Anderson v. Globe Nav. Co.*, 57 Wash. 502, 107 Pac. 376; *Olson v. Erickson*, 53 Wash. 458, 102 Pac. 400.

The judgment appealed from is reversed, and a new trial awarded.

DUNBAR, C. J., PARKER, and GOSE, JJ., concur.